| | | |
|---|---|---|
| NEW HICKORY PIZZA, INC., | ) | |
| D/B/A DOMINO'S PIZZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TIG INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant TIG Insurance Company's "Motion to Dismiss the Amended Complaint." (Doc. 13). Plaintiff responded in opposition (Doc. 14) and Defendant replied (Doc. 17). The matter is ripe for decision. For the reasons that follow, the Motion to Dismiss the Amended Complaint (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**.

## I.    PROCEDURAL HISTORY

This action arises from an insurance coverage dispute related to underlying State court tort actions ("Underlying Tort Actions"). Plaintiff brought the action presently before this Court on August 12, 2016, in the General Court of Justice, Superior Court Division for the County of Catawba, State of North Carolina, against Defendant and against America[n] Safety Indemnity Company, America[n] Safety Claims Services, Inc., and Riverstone Claims Management, LLC. (Doc. 1-1 at 6). Only Defendant TIG Insurance Company remains a defendant.[1]

---

[1] TIG Insurance Company's Notice of Removal states that it "is successor by merger to American Safety Indemnity Company . . . ." (Doc. 1 at 1). The Notice of Removal also states that on September 6, 2016, Plaintiff filed a Voluntary Dismissal with Prejudice of the three other originally named Defendants, "thereby leaving TIG as the current sole remaining Defendant." (Doc. 1 at 2).

The State court complaint (now removed to this Court) alleged that Plaintiff New Hickory Pizza and its employee, Brandon Manuel Vazquez, had been sued in the Underlying Tort Actions for death and serious injuries resulting from an automobile accident involving Vazquez while he was driving for New Hickory Pizza. (Doc. 1-1 at 7 (Original Compl. ¶ 9); *see* Doc. 12 at 2 (Am. Compl. ¶ 6), Docs. 12-2, 12-3 (Underlying Tort Actions)). Following settlement of the Underlying Tort Actions, Plaintiff brought this action in State court, asserting Defendant refused to defend and indemnify Plaintiff in the Underlying Tort Actions ("Original Complaint"). (Docs. 1 at 1, 1-1 at 7-8).

On September 14, 2016, Defendant TIG Insurance Company ("Defendant") removed Plaintiff's action to this Court based upon the parties' diversity of citizenship. (Doc. 1 at 1-3). Plaintiff did not contest the removal and Defendant moved to dismiss the Original Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 5). Plaintiff filed a memorandum in opposition to the motion to dismiss as well as a Motion to Amend its Complaint and a proposed Amended Complaint. (Docs. 6, 7, 7-1).

On November 21, 2016, the Court granted the Motion to Amend as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1) and denied Defendant's original Motion to Dismiss (Doc. 5) without prejudice as administratively moot. (Doc. 11 at 1-2). The next day Plaintiff filed an Amended Complaint asserting, in three Claims for Relief, the following: (1) Breach of Contract; (2) Breach of Duty of Good Faith and Fair Dealing/Unfair and Deceptive Trade Practices; and (3) Punitive Damages. (Doc. 12 at 4-8). Defendant now moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss with prejudice the Claims for Relief and the Amended Complaint itself. (Doc. 13 at 3).

Plaintiff is alleged to be a North Carolina corporation with its principal place of business in Catawba County, North Carolina. (Doc. 1 at 1; Doc. 1-1 at 6). Defendant is alleged to be a

California corporation with its principal place of business in New Hampshire. (Doc. 1 at 1; Doc. 1-1 at 7). The amount in controversy is more than $75,000. Plaintiff alleges, among other things, a breach of contract cause of action in which Defendant is alleged to have failed to indemnify Plaintiff for a $200,000 payment Plaintiff made in settlement of the Underlying Tort Actions. (Doc. 1 at 3; Doc. 1-1 at 9). The State court action was timely removed to this Court. (*See* Docs. 1, 1-1). The Court, therefore, has jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## II.    STANDARD OF REVIEW

Rule 12(b)(6) provides for the dismissal of a cause of action based upon a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In alleging fraud, a party must state with particularity the circumstances constituting fraud. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

In evaluating a motion to dismiss, a court must construe the complaint's factual allegations "in the light most favorable to the plaintiff" and "must accept as true all well-pleaded allegations." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A court, however, "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotation marks omitted); *Randall*, 30 F.3d at 522.

While Fed. R. Civ. P. 8(a)(2) does not require "detailed factual allegations," a complaint must offer more than "naked assertion[s]" and unadorned "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be sufficient to "raise a right to relief above the speculative level" and "state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under *Iqbal*, the Court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth. Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." 556 U.S. at 681. Requiring plausibility "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, but does demand more than a "sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Ultimately, a claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Fed. R. Civ. P. 56. In such cases, all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

## III.    FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT

The Amended Complaint names TIG Insurance Company as the sole Defendant. (Doc. 12 at 1 ("Am. Compl.")). The relevant well-pleaded allegations, taken as true for purposes of Rule 12(b)(6), are as follows:

Defendant, by and through the America[n] Safety Indemnity Company ("ASIC"), issued a Commercial Auto Liability Excess Policy to Plaintiff that at all times relevant was in full force and effect (the "Policy"). (Am. Compl. ¶ 3). The Policy included an endorsement providing coverage for loss incurred by Plaintiff arising from employee operation of automobiles not owned by Plaintiff, subject to specified restrictions. (Am. Compl. ¶ 10). Plaintiff was sued in the Underlying Tort Actions by Elaine Marie Debenport and by Sharon Sanford Perkins, the latter as

Administratrix of the Estate of Daniel Edward Sanford.  Debenport and Sanford alleged negligence on behalf of New Hickory Pizza and its employee, Brandon Manuel Vazquez, in an automobile accident which resulted in the death of Daniel Sanford and the severe injury of Elaine Debenport. (Am. Compl. ¶ 6).  Copies of the Underlying Tort Actions were forwarded to ASIC.  (Am. Compl. ¶ 7).

Plaintiff made demand on ASIC for defense and indemnification of the Underlying Tort Actions.  American Claims Services, Inc., acting as an agent for and/or on behalf of ASIC, sent a denial letter to Plaintiff, citing the basis of denial being the failure of Manuel Vazquez ("Vazquez") to meet "the minimum driving requirements as identified" in the Special Restrictions for the Operation of Automobiles Endorsement (Form CA AS 0111 0412) ("Special Restrictions") and stating that "there is no coverage for this loss under the policy issued by ASIC."  (Am. Compl. ¶ 8).

Plaintiff renewed its request for defense and indemnification.  ASIC, through its agent Riverstone Claims Management, sent a second letter to Plaintiff stating that "as a condition of insurance, the Named Insured agrees that no driver will be allowed to operate an automobile on behalf of the Named Insured if said driver has been driving for less than two years.  As such, the above endorsement applies and we must respectfully deny coverage of this claim."  (Am. Compl. ¶ 9).

The Policy read, in relevant part:

SECTION 1 – COVERAGE

A.      INSURING AGREEMENT – EXCESS LIABILITY INDEMNITY
        To pay on behalf of the "insured" the amount of "loss" which is in excess
        of the applicable limits of liability of the underlying insurance . . .

SECTION 111 – COVERED AUTOS . . .

2.    NON-OWNED "AUTOS"
Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes "autos" owned by your employees . . . or members of their household but only while used in your business affairs. . . .

5. <u>OTHER CONSIDERATIONS</u>: The Named insured agrees that no driver or prospective driver will be allowed to operate an automobile on behalf of the Named Insured if the said driver or prospective driver does not comply with the following:

❖  *Driver must be at least 18 years of age with a minimum of two years U.S. driving experience and hold a valid driver's license for the residing state.*

(Am. Compl. ¶ 10 (citing CA AS 0103 0109 ("Commercial Auto Liability Excess Coverage Form") and CA AS 0111 0412 ("Special Restrictions for the Operation of Automobiles")) (emphasis added); *see* Doc. 12-1 (entire Policy)).

At the time of the accident, Vazquez: (1) did have a valid North Carolina driver's license; (2) was nineteen years of age; (3) had been driving automobiles in the United States for over two years, (4) was an employee of Plaintiff; and (5) was operating a motor vehicle owned by his parent and did so on behalf of Plaintiff's business.  (Am. Compl. ¶¶ 11-12, 15).  The Underlying Tort Actions were settled by way of exhaustion of all underlying liability policies as well as a payment by Plaintiff in the amount of $200,000.  (Am. Compl. ¶ 13).  Plaintiff further alleges that it complied with all of the terms and conditions of the Policy.  (Am. Compl. ¶ 14).  Defendant, without adequately inquiring into whether Vazquez met the requirements set out in the Policy, denied Plaintiff's claim and refused to indemnify Plaintiff.  (Am. Compl. ¶ 16).

## IV.    ANALYSIS

Plaintiff asserts three claims for relief: (1) Breach of Contract; (2) Breach of Duty of Good Faith and Fair Dealing/Unfair and Deceptive Trade Practices; and (3) Punitive Damages.  (Doc. 12 at 4-8).  Defendant seeks dismissal of all counts on the grounds that: (1) Plaintiff has admitted facts demonstrating that there could have been no breach of contract; (2) Plaintiff failed to allege

sufficient facts to support a claim for common law bad faith or violation of the North Carolina Unfair and Deceptive Trade Practices Act; and (3) "Punitive Damages" is not a separate stand-alone claim under North Carolina law. (Doc. 13-1 at 2). The Court will consider each claim in turn.

A.    First Claim for Relief: Breach of Contract

In North Carolina, "[t]he elements of a breach of contract claim are (1) existence of a valid contract, and (2) breach of the terms of that contract." *Poor v. Hill*, 530 S.E.2d 838, 843 (2000). Plaintiff alleges that it entered into an excess coverage contract with Defendant (the "Policy"). (Am. Compl. ¶¶ 3, 10-23). Defendant does not challenge the validity of the Policy.

Plaintiff, in addressing the second element of a breach of contract claim, alleges Defendant breached the Insurance Policy by refusing to provide a defense to or coverage for the Underlying Tort Actions. Specifically, Plaintiff alleges that it was sued in the Underlying Tort Actions for negligence on behalf of itself and its employee for an automobile accident, demand was made on Defendant for defense and indemnification, and Defendant refused to provide either defense or indemnification. (Am. Compl. ¶¶ 6-9, 22-23). Plaintiff further alleges that it complied with all the terms and conditions of the Policy and that its employee Vazquez satisfied the Special Restrictions requirements for drivers because he was at least eighteen years old, had been driving for over two years in the United States, and had a valid North Carolina driver's license. (Am. Compl. ¶¶ 14-15, 20-21).[2]    Finally, Plaintiff alleges that despite Plaintiff's compliance with the

_____

[2] The Amended Complaint alleges Defendant denied Plaintiff's claim "by claiming there was no coverage in that Vazquez allegedly had a particular violation, citation, accident or combination thereof that made him exempt of conforming to the policy." (Am. Compl. ¶ 25). The denial letters did reference general Policy language regarding violations, etc. that are disqualifying but do not appear to have specifically denied Plaintiff's claim on that ground. (*See* Docs. 12-4, 12-5). Defendant's briefing, however, includes an assertion that Plaintiff's breach of contract claim depends on an unreasonable reading of the Policy, namely, that Vazquez's "self-proclaimed *illegal* driving should fulfill the requirements" of the Special Restrictions. (Doc. 13-1 at 13). This same argument was presented in Defendant's memorandum in support of its motion to dismiss the Original Complaint. (Doc. 5-1 at 7). The language

terms and conditions of the Policy, Defendant, without inquiry into whether Vazquez met the requirements of the Policy, denied Plaintiff's claim and refused to indemnify Plaintiff. (Am. Compl. ¶ 16).

On its face, the Complaint alleges facts sufficient to raise a right to relief above the speculative level and states a claim for breach of contract that is plausible on its face. *See Twombly*, 550 U.S. at 570. The alleged facts regarding the existence of the Policy, a covered event, Plaintiff's compliance with the terms of the Policy, and Defendant's denial of the resulting claim, sufficiently allege a contract and a breach of that contract. Taken as true at the motion to dismiss stage, these allegations plausibly suggest an entitlement to relief for breach of contract. *See Iqbal*, 556 U.S. at 681. Defendant, however, contends Plaintiff's alleged admissions in the *Original* Complaint warrant dismissal of the breach of contract claim in the *Amended* Complaint. The Court addresses that argument immediately below.

i.     *Application of Allegation in Original Complaint to Motion to Dismiss*

Defendant does not challenge the level of detail in the Amended Complaint with respect to the breach of warranty claim. (Doc. 17 at 3). Rather, Defendant moves to dismiss the breach of contract claim on the ground that Plaintiff's allegations in the *Original* Complaint demonstrate that Plaintiff's claim is "impermissibly premised upon an unreasonable reading of the Policy." (Doc. 13-1 at 6-10, 11-16; Doc. 17 at 3). Defendant argues that Vazquez did not meet the "minimum of two years U.S. driving experience" required by the Special Restrictions because of an alleged admission in the *Original* Complaint that at the time of the accident "he had not been *licensed* for two (2) years." (*See* Doc. 1-1, Original Compl. ¶ 14 (emphasis added)). From this, Defendant argues that the Court should consider this "admission" in the Original Complaint and

---

in the Amended Complaint appears to have been an attempt to address the prior argument regarding alleged "illegal driving."

conclude, at the motion to dismiss stage, that Vazquez "did not have two years' experience with a valid driver's license[], a fact that precludes coverage under the Policy." (Doc. 13-1 at 6, 11). If coverage is precluded, Defendant reasons, then Defendant owed no duty to defend or indemnify and thus no breach of the contract could have occurred. As a result, Defendant concludes, Plaintiff cannot state a breach of contract claim that is plausible on its face. (Doc. 13-1 at 3).

To accept Defendant's argument at this stage of the litigation, the Court is required to: (1) determine that it can and should at this time consider the allegation in the Original Complaint about Vazquez "not [having] been licensed for two (2) years"; and, if it does, (2) determine as a matter of law that the Policy's phrase "minimum of two years U.S. driving experience" means "minimum of two years U.S. driving experience while licensed." (*See* Doc. 13-1 at 6). Because the Court determines that it will not consider prior allegations in the Original Complaint in determining the Motion to Dismiss the Amended Complaint, it will not construe the Policy's Special Restrictions at this time.[3]

"As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (internal quotation marks omitted). Defendant argues for an exception to this rule, citing several opinions from district courts in the Second Circuit for the proposition that a court may hold a plaintiff to prior allegations when allegations in a superseding complaint "directly contradict" or are "entirely inconsistent" with the prior allegations. *See Wallace v. N.Y.C. Dep't of Corrections*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) ("directly contradicts"); *Baron v. Rabinovici*, 2006 WL

---

[3] Plaintiff, without citing to any authority, asserts that consideration of the Policy is beyond the scope of a Rule 12(b)(6) motion to dismiss. (Doc. 14 at 9). However, "[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (N.C. App. 2000). In other words, when the facts are undisputed, construction and application of the policy provisions to the undisputed facts is a question of law. *Cone Mills Corp. v. Allstate Ins. Co.*, 443 S.E.2d 357, 359 (N.C. App. 1994). Under proper circumstances, a court may consider whether a claim is plausible in light of an insurance policy's language.

1318426, at *3 (E.D.N.Y. May 12, 2006) ("entirely inconsistent"); *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 23, 2008) ("directly contradicts" (quoting *Wallace*)), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (summary order). This approach, however, does not appear to be the majority approach even in the Second Circuit. It has been noted that district courts in the Second Circuit have taken three different approaches to prior inconsistent pleadings: (1) courts may consider prior inconsistent pleadings relevant, but only as controvertible, not conclusive admissions; (2) courts have no obligation to accept as true an amended complaint's allegations if they "directly contradict those facts set forth in the original complaint" (the position taken by Second Circuit cases noted above); and (3) courts should typically disregard prior contradictory pleadings but there may be rare cases requiring departure from the rule. *Palm Beach Strategic Income, LP v. Salzman*, 2011 WL 1655575, at *5-*6 (E.D.N.Y. May 2, 2011) (describing the first approach as the one taken by most district courts in the Second Circuit), *aff'd*, 457 F. App'x 40 (2d Cir. 2012).[4]

In this case, the Amended Complaint's allegation that "[at] the time of the accident, Vazquez did have a valid North Carolina driver's license . . . and . . . had been driving automobiles in the United States for over two years" neither "directly contradicts" nor is "entirely inconsistent" with Plaintiff's prior allegation that "while he had not been licensed for two (2) years [at the time of the accident], Vazquez . . . had been driving automobiles in the United States for over two years." (*Compare* Doc. 1-1, Original Compl. ¶ 14, *with* Doc. 12, Am. Compl. ¶ 11). Both complaints allege that Vazquez had been driving in the United States for over two years, which addresses the Special Restrictions requirement that drivers have "a minimum of two years U.S.

---

[4] Defendant acknowledges cases in the first category and attempts to distinguish them on the ground that such cases generally seek to clarify allegations or cast original allegations in a somewhat different light rather than directly contradicting or blatantly omitting facts already pled. (Doc. 13-1 at 8 n.4).

driving experience." Further, the addition of language regarding Vazquez being licensed in North Carolina at the time of the accident also aligned the facts alleged to the Special Restrictions requirement that the "insured [New Hickory Pizza] agrees that no driver or prospective driver will be allowed to operate an automobile on behalf of the Named Insured if the said driver or prospective driver does not . . . hold a valid driver's license for the residing state."[5] (*See* Am. Compl. ¶ 10; Doc. 12-1 at 22). The Second Circuit district court and similar opinions cited by Defendant are distinguishable on this basis alone.

The Court has also considered cases cited by Defendant in which an *omission* or a subsequent allegation did not directly contradict a prior allegation but the court nevertheless considered the prior allegation. Several of the federal cases cited by Defendant rely on the same Second Circuit cases noted above. *E.g.*, *Fernandez v. Sch. Bd. of Miami-Dade Cnty.*, 2016 WL 4417632, at *5 n.1 (S.D. Fla. Aug. 19, 2016) (citing, among other Second Circuit cases, *Colliton*); *Kant v. Columbia Univ.*, 2010 WL 807442, at *7-*8 (S.D.N.Y. Mar. 9, 2010) (citing, among other Second Circuit cases, *Wallace* and *Colliton*) (plaintiff's "unexplained new recollection . . . strongly suggests bad faith"; denying motion to amend); *Fox v. S. Ry. Co.*, 764 F. Supp. 644, 647 (N.D. Ga. 1991) (finding plaintiff showed evidence of bad faith; denying motion to amend).

Here, the Court does not perceive the bad faith identified in cases cited by Defendant. As noted above, Plaintiff's amendment corrected a potential defect in the allegations relating to Vazquez's inclusion under the Special Restrictions, which provided, in relevant part, that a "[d]river must be at least 18 years of age with a minimum of two years U.S. driving experience and hold a valid driver's license for the residing state." The allegation in the Original Complaint did not address the question of whether he held a driver's license of the state in which he resided

---

[5] It appears that Mr. Vazquez was a resident of North Carolina at the time of the accident. The Underlying Tort Actions alleged Mr. Vazquez was a citizen and resident of Hickory, North Carolina. (Doc. 12-2 at 2; Doc. 12-3 at 2).

while driving as an employee of Plaintiff.  The Amended Complaint modified the allegation to specify that: "At the time of the accident, Vazquez did have a valid North Carolina driver's license." (Am. Compl. ¶ 11).

Further, although not cited by Plaintiff, there is substantial authority for the proposition that an allegation in a superseded complaint should not be considered at the motion to dismiss stage, although it might be considered at a later stage.  As noted recently by the Third Circuit court of appeals:

> Even if Plaintiff's allegations in the original complaint constituted judicial admissions, it does not follow that they may not amend them. . . .
>
> Nor was dismissal warranted because Plaintiffs sought to "take a contrary position . . . to avoid dismissal." . . .
>
> We find the Seventh Circuit's decision in *Kelly v. Crosfield Catalysts*, 135 F.3d 1203 (7th Cir. 1998), particularly instructive . . . The Seventh Circuit [in reversing the district court's decision that omitted allegations in a prior complaint were binding] first noted that "[i]t is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*."[6]  It then explained that "[i]f certain facts or admissions in the original complaint become *functus officio*, they cannot be considered by the court on a motion to dismiss the amended complaint.  A court cannot resurrect these facts when assessing whether the amended complaint states a viable claim." . . . This approach is consistent with how other courts of appeals have treated the issue. [Citations omitted; citing opinions from the First, Fifth, and Ninth Circuit courts of appeal.]
>
> This is not to say, however, that a party's assertion of contrary factual positions in the pleadings is without consequence.  A superseded pleading may be offered in evidence rebutting a subsequent contrary assertion. . . . However, at the motion to dismiss stage, when the district court may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint.

---

[6] "Functus officio" is defined as "[h]aving fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force or authority."  Black's Law Dictionary 673 (6th ed. 1990).

*West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171-73 (3d Cir. 2013) (bracketed notes added).[7]  District courts in the Fourth Circuit have acknowledged the Seventh Circuit's approach, one taken by at least five circuit courts of appeal.  *See Charter Oak Fire Co. v. Am. Capital, Ltd.*, 2016 WL 827380, at *8 (D. Md. Mar. 3, 2016) ("Although the Fourth Circuit has not definitively held that judicial admissions may be withdrawn by amendment, the Third Circuit noted that at least five circuits allow such a practice."); *Midwestern Midget Football Club, Inc. v. Riddell, Inc.*, 2016 WL 3406129, at *5 & *5 n.4 (S.D.W. Va. June 17, 2016) ("Even assuming that the allegations in the first amended complaint and the operative complaint are factually inconsistent, allegations made in a superseded complaint are not treated as judicial admissions.") (declining to address whether prior allegations might be admissible at a later stage of the case).

The Court does not view the Amended Complaint as taking a position directly contradicting or entirely inconsistent with the facts alleged in the Original Complaint.  Nor does the Court view Plaintiff as "blatantly changing" its statement of facts in bad faith.  Rather, Plaintiff addressed a missing "element" in the Original Complaint with respect to the Special Restrictions, which the Amended Complaint addressed.  Nor is Defendant precluded from presenting a dispositive defense at an appropriate time.  Therefore, the Court declines Defendant's invitation to consider allegations from the superseded Original Complaint and construe the Policy in light of those allegations at this stage of litigation.[8]

---

[7] The Fourth Circuit court of appeals has noted that a district court may look outside the four corners of the complaint in considering a Rule 12(b)(6) motion in limited circumstances.  The court may take judicial notice of matters of public record (including statutes), documents incorporated into the complaint by reference, and documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic.  *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

[8] Defendant encourages the Court to look at exhibits to the Amended Complaint, specifically its November 4, 2013 denial letter to Plaintiff.  Plaintiff clearly included the denial letter as an exhibit demonstrating its allegation that Defendant denied its request for defense and indemnification and did not adopt language in the denial letter as its own.  Further, the denial letter presents Defendant's version and does not constitute an admission by Plaintiff.

ii.     *Duty to Defend*

Defendant separately argues that it had no duty to defend the Underlying Tort Actions because the Policy itself provides that it is an excess coverage policy to another policy and explicitly disclaims a duty to defend on the part of Defendant.  (Doc. 13-1 at 15-16).  In making this argument, Defendant quotes from the Policy, which is attached to the Amended Complaint.  (Doc. 13-1 (quoting from Doc. 12-1)).  A court, in determining a Rule 12(b)(6) motion, is not entirely confined to the four corners of the complaint but may consider "documents incorporated into the complaint by reference."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Defendant points to language in the Policy under the heading "Insuring Agreement – Excess Liability Indemnity": "The provisions of the immediate underlying policy are incorporated as part of this policy *except for any obligation to investigate or* [sic – *and*] *defend and pay for costs and expenses incident to the same . . . .*"  (Doc. 13-1 at 15 (quoting Doc. 12-1, Form CA AS 0103 0109 (emphasis added))).  Defendant also quotes from language under the heading "Participation in Defense by the Company": ". . . We, at our option, *may but are not required to*, participate in the investigation, settlement *or defense* of any claim or suit against the 'insured' . . . ."  (*Id.* (emphases added)).  Defendant asserts that the Amended Complaint does not cite any Policy provision that would impose a duty to defend and argues that "the above Policy provisions prove TIG could have never had a duty to defend, even if there were coverage for indemnity, and TIG's refusal to provide a defense to New Hickory cannot ground the breach of contract claim."  (Doc. 13-1 at 16).  Plaintiff does not address this argument directly nor point to language which potentially modifies the language quoted above.  Rather, Plaintiff includes a conclusory statement that the interpretation of the Policy should be considered later.  (Doc. 14 at 4-10).

The Court acknowledges Defendant's argument may have merit in the context of the Policy, a Commercial Auto Liability *Excess* Policy. (*See* Doc. 12-1 at 1). The Court notes, however, that Defendant did not, in either denial letter, specify as a ground for denying coverage the argument it asserts here. In each letter, the focus of the denial was the assertion that Vazquez did not meet the minimum driving requirement of the Policy. (*See* Doc. 12-4 (November 4, 2013 Letter); Doc. 12-5 (January 6, 2015 Letter)). To be sure, Defendant explicitly and repeatedly made clear that there may be other provisions of the Policy that might preclude coverage and that it did not intend to waive "any other forms or conditions of its policy, including exclusions, and specifically reserves all rights under its policy." (Doc. 12-4 at 1, 4; Doc. 12-5 at 1, 6). But it remains that the Amended Complaint alleges a duty to defend.

In light of the absence of language in the denial letters regarding a lack of contractual duty to defend and the Court's decision not to consider allegations in the Original Complaint at this time with regard to coverage generally, the Court will defer interpretation and application of the Policy regarding any duty to defend to a time when all relevant portions of the Policy may be interpreted and applied to the undisputed facts of this case. The Court perceives no prejudice to Defendant in this regard as Plaintiff's breach of contract claim generally would proceed on the indemnity claim even if the Court interpreted part of the Policy at the motion to dismiss stage and granted the Motion to Dismiss the Amended Complaint as to a duty to defend. The issue of breach of contract, with respect to coverage generally and indemnification specifically, will remain.

Defendant's Motion to Dismiss the First Claim for Relief is **DENIED**.

B.      Second Claim for Relief: Bad Faith/UDTPA

Plaintiff's Second Claim for Relief consists of a breach of good faith and fair dealing claim (which the parties treat as a bad faith settlement claim) and a claim under the North Carolina Unfair

and Deceptive Trade Practices Act. The parties have treated the Second Claim for Relief as including two different claims. (*See* Docs. 13-1 at 16-25, 14 at 11-16). Because the Second Cause of Action includes two distinct claims, and putting aside whether two claims should be combined in a single claim for relief, the Court will address each in turn.

i. *Breach of Good Faith and Fair Dealing (Bad Faith)*

Plaintiff's second cause of action includes a claim for breach of good faith and fair dealing, which the parties treat as a bad faith settlement claim. Under North Carolina law, a plaintiff may assert a tort of bad faith refusal by an insurance company to settle a claim. *See Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 184 (N.C. App. 1993), *aff'd in part, disc. rev. improvidently allowed in part*, 435 S.E.2d 71 (N.C. 1993); *see also Blis Day Spa, LLC v. The Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 631 (W.D.N.C. 2006). The parties, both citing *Cleveland Constr., Inc. v. Fireman's Fund Ins. Co.*, 819 F. Supp. 2d 477, 483 (W.D.N.C. 2011), agree that to have a common law bad faith claim against an insurance company based on a refusal to settle a claim, a plaintiff must prove: (1) the insurance company refused to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct (for punitive damages). (Doc. 13-1 at 16-17; Doc. 14 at 11; Doc. 17 at 7). "Bad faith" means "not based on honest disagreement or innocent mistake." *Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.*, 11 F. App'x 225, 239 (4th Cir. 2001) (unpublished per curiam) (quoting *Dailey v. Integon Gen. Ins. Corp.*, 331 S.E.2d 148, 155 (N.C. App. 1985)). A plaintiff may demonstrate aggravating conduct by showing fraud, malice, gross negligence, insult, rudeness, oppression, or reckless and wanton disregard of a plaintiff's rights. *Lovell*, 424 S.E.2d at 185. A plaintiff must allege more than an honest disagreement as to the validity of the claim. *See Topsail*, 11 F. App'x at 239.

The first element of a bad faith refusal to settle claim is that the insurance company refused to pay after recognizing a valid claim. Defendant points to its letters denying Plaintiff's demand for defense and indemnity as demonstrating that there was no recognition of a valid claim on Defendant's part and, as a result, Plaintiff could not plausibly state a claim because it could never allege sufficient facts to meet the first element of the claim, i.e., that the insurance company refused to pay "after recognizing a valid claim." (Doc. 13-1 at 17). For example, the November 4, 2013 Letter, incorporated into the Amended Complaint, specifically states that because Vazquez "did not meet the minimum driving requirement . . . there is no coverage for this loss under the policy." (Doc. 12-4).

Plaintiff counters that Defendant's "denial letter does not equate to a lack of recognition of a valid claim" but simply demonstrates that Defendant took a contorted reading of the Policy to intentionally exclude coverage when coverage clearly existed under a plain reading of Policy's language. (Doc. 14 at 12). That conduct, Plaintiff concludes, evidences both bad faith and aggravating or outrageous conduct. (*Id.*). Plaintiff cites no authority for its position.

Plaintiff also asserts that it alleged recognition of a valid claim and a failure of the Defendant to pay but cites 15 paragraphs in the Amended Complaint rather than pointing to specific language. (Doc. 14 at 11 (citing Am. Compl. ¶¶ 8-12, 14-16, 24-30)). Paragraphs 8-12 of the Amended Complaint set out Defendant's position on coverage and the Policy language in dispute. Paragraphs 14-16 allege that coverage existed and that Defendant denied Plaintiff's claim "without adequately inquiring into whether Vazquez met the requirements set out" in the Policy. Paragraphs 24-30 alleged that: (1) Defendant denied the claim by "claiming there was no coverage in that Vazquez allegedly had a particular violation, citation, accident, or combination thereof as listed in the [Policy] that would place his actions on behalf of the plaintiff outside of the scope of

coverage under the . . . Policy" (Am. Compl. ¶ 25)[9]; (2) Defendant denied Plaintiff's claim before properly investigating (Am. Compl. ¶ 28); (3) Defendant recognized the ambiguity in the Policy and attempted to avoid covering Vazquez "by contorting language" in the Policy and based the denial on improper allegations and assumptions against Vazquez not backed by convictions or charges (Am. Compl. ¶ 27); and (4) Defendant improperly construed the terms of the Policy in order to exclude Vazquez and "rather than providing coverage after recognizing a valid claim" and then amending the Policy terms in the *next* renewal period, Defendant "purposefully denied the claim so as not to provide coverage for the particular circumstances of the accident at issue" (Am. Compl. ¶ 28). Paragraphs 29 and 30 address an Unfair and Deceptive Trade Practices Act claim, which is discussed separately below. Despite the allegation that Defendant attempted to avoid coverage "by contorting language" in the Policy, none of the referenced allegations sufficiently allege that Defendant at any point recognized the claim as valid. Plaintiff does use the phrase "[r]ather than providing coverage after recognizing a valid claim" (Am. Compl. ¶ 28) but without supporting factual allegations and in a conclusory manner.

The Court's determination of a bad faith settlement claim in *Lenoir Mall, LLC v. State Farm Fire & Cas. Co.*, 2011 WL 3682794 (W.D.N.C. Aug. 23, 2011), is instructive. In *Lenoir Mall*, the complaint's bad faith settlement cause of action alleged that the defendant in that case owed plaintiffs a duty to investigate an incident and to determine whether coverage existed. The complaint alleged defendant refused to pay plaintiffs' claim without conducting a reasonable investigation but instead willfully or wantonly looked only for a reason to deny coverage, acts which plaintiff alleged rose to a degree of negligence indicating a reckless indifference to

---

[9] Although the denial letters quoted language from the Policy related to violation, citation, accident or a combination of these, the reason stated for denial of coverage does not appear to have included this ground. (See Docs. 12-4, 12-5).

consequences, oppression, insult, rudeness, caprice, and willfulness. *Lenoir Mall, LLC v. State Farm Fire & Cas. Co.*, Case No. 5:10-cv-00040-RLV-DSC (W.D.N.C.), Doc. 1-1 at 5 (removed complaint). Based on these allegations, this Court in *Lenoir Mall* held that the plaintiff could not satisfy the first element of a claim for bad faith settlement because it did not allege that the defendant insurance company ever recognized the validity of plaintiff's insurance claim. 2011 WL 3682794, at *3-*4 (dismissing bad faith settlement claim with prejudice; allowing breach of contract claim and UDTPA claim based on violations of N.C. Gen. Stat. § 58-63-15(11) to proceed).

Similarly, in *Clear Creek Landing Home Owners' Ass'n, Inc. v. Travelers Indem. Co. of Conn.*, 2012 WL 6641901 (W.D.N.C. Dec. 20, 2012), the court considered a bad faith settlement claim in which plaintiff alleged that the defendant denied and refused plaintiff's claim for loss for roof damage allegedly due to hail and failed to perform a reasonable inspection of roofs allegedly so damaged all the while having approved all insurance claims for hail damage to other buildings in plaintiff's immediate neighborhood. *Clear Creek Landing Home Owners' Ass'n, Inc. v. Travelers Indemnity Co. of Conn.*, Case No. 1:12-cv-00157-DLH (W.D.N.C.), Doc. 1-3 at 3-4. The court in *Clear Creek* noted that the complaint alleged that the defendant had maintained that the claim was not valid because the damage to the roof was a result of stress damage as opposed to hail damage. 2012 WL 6641901, at *3. The court concluded that: "The fact that Defendant may have determined that claims submitted by other insured for damage to their roofs were valid does not satisfy Plaintiff's requirement to plead facts demonstrating that Defendant recognized that Plaintiff's claim was valid. Absent such allegations, Plaintiff cannot state a claim for bad faith settlement." *Id.*

And in *Barnett v. State Auto Prop. & Cas. Ins. Co.*, 2015 WL 276512 (W.D.N.C. Jan. 22, 2015), the court concluded that the complaint failed to allege defendant insurance company ever recognized a claim for the entirety of the loss sought by plaintiff, although recognizing part of the claim as tornado damage and making payments on the recognized valid portion of the claim. The court noted, however, that the complaint was "devoid of any allegations that Defendant recognized the *entirety* of Plaintiff's claim as valid. Rather, the Complaint alleges the opposite — that Defendant determined that a large portion of Plaintiff's claim was not valid because the damage was caused by something else other than the tornado." 2015 WL 276512, at \*3. Concluding that paying a portion of a claim while disputing the remainder was insufficient to establish that the defendant recognized the entirety of the claim, the court found plaintiff could not state a claim for bad faith settlement. *Id.*

The Court finds Plaintiff has failed to allege sufficient facts to make plausible that Defendant ever recognized the claim at issue here as valid. The denial letters unambiguously made clear that Defendant did not recognize the claim and provided reasons based on language in the Policy. Further, consistent with *Lenoir Mall*, *Clear Creek*, and *Barnett*, allegations of a failure to reasonably investigate are not in themselves sufficient with respect to the first element of a bad faith settlement claim.

Absent sufficient allegations that Defendant recognized the claim, Plaintiff cannot state a claim for bad faith settlement. The Court, therefore, need not consider the remaining elements of a bad faith settlement claim. Defendant's Motion to Dismiss the part of the Second Claim for Relief constituting Plaintiff's breach of duty of good faith and fair dealing (bad faith) claim is **GRANTED**.

ii. *Unfair and Deceptive Trade Practices Act*

Defendant also moves to dismiss the portion of the Second Claim for Relief asserting violations under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 *et seq*. ("UDTPA"). To establish a UDTPA claim under § 75-1.1, a plaintiff must show "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing, Inc. v. Pollard*, 400 S.E.2d 476, 482 (N.C. App. 1991).

In the insurance context, a violation of N.C. Gen. Stat. § 58-63-15(11) ("Unfair Claim Settlement Practices") can constitute an unfair or deceptive trade practice. "[P]rohibited acts listed in N.C. Gen. Stat. § 58-63-15(11) are also acts which are unfair, unscrupulous, and injurious to consumers, and . . . such acts therefore fall within the 'broader standards' of N.C. Gen. Stat. § 75-1.1." *Meadlock v. Am. Family Life Assur. Co.*, 729 S.E.2d 127, 2012 WL 2891079, at *6 (N.C. App. 2012) (unpublished table decision) (noting a plaintiff must still show an injury by the violation) (quoting *Country Club of Johnston County, Inc. v. U.S. Fidelity & Guar. Co.*, 563 S.E.2d 269, 279 (N.C. App. 2002)).

Here, Plaintiff asserts five violations of the UDTPA plus a general "and otherwise committed unfair and deceptive acts" claim. The Court will use Defendant's numbering designation as a convenient way to address the allegations:

(1) Defendant failed to attempt in good faith to effectuate prompt, fair and equitable settlement of the claim for which liability had become reasonably clear.

(2) Defendant delayed the investigation and/or settlement of the claim.

(3) Defendant failed to promptly provide a reasonable explanation of the basis in the policy in relation to the facts or applicable law for denial of the claim and/or for defending under a Reservation of Rights.

(4) Defendant failed to provide prompt payment of the claim under the Policy.

(5) Defendant failed to provide a defense after being notified of allegations in the Underlying Tort Actions that could fall under the liability coverage portion of the Policy.

(Am. Compl. ¶ 29).  Allegation 1 tracks the language of § 58-63-15(11)(f) and Allegation 3 tracks the language of § 58-63-15(11)(n).  A plaintiff asserting a UDTPA claim pursuant to § 58-63-15(11)(f) need show only conduct that violates the subsection without the necessity of an additional showing of frequency indicating a "general business practice."  *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 683 (N.C. 2000).  As discussed below, Plaintiff's principal UDTPA claim is made under § 58-63-15(11)(f).

First, Defendant argues that as a matter of law Plaintiff's entire UDTPA claim should be dismissed because Defendant did not breach the contract.  (Doc. 13-1 at 20).  This argument relies on resolution of the application of the Policy to employee Vazquez, an issue this Court does not reach as noted above.  This argument, therefore, fails at this stage.

Second, Defendant argues that Allegations 2, 4, and 5 should be dismissed for failing to properly state a violation of Section 58-63-15(11) in that they "do not track any of the subsections of Section 58-63-15(11)."  (Doc. 13-1 at 21-22).  In a footnote, Defendant asserts that these Allegations cannot constitute independent violations of § 75-1.1 because Plaintiff failed to allege facts to support a claim that the alleged acts are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers."  (Doc. 13-1 at 22 n.12).  Although Plaintiff states that its UDTPA claim is based on more than a mere violation of N.C. Gen. Stat. § 58-63-15(11) and more than a mere breach of contract claim, the Amended Complaint does not contain allegations that might support a claim beyond the statute.  Plaintiff essentially concedes as much, focusing on an alleged violation of § 58-63-15(11)(f) and asserting that it made sufficient allegations "to state a claim for relief under N.C. Gen. Stat. § 58-63-15(11) that is plausible on its face."  (Doc. 14 at 14-

16).  In any event, allegations 2 and 4 appear to be variations or subsets of Allegation 1.  Allegation 5 goes to the alleged duty of Defendant to defend, an issue which the Court has deferred to a later stage.

Third, Defendant argues that Allegations 1, 4, and 5 should be dismissed because there was no breach of contract or, at a minimum, there was a reasonable basis for Defendant's denial of the claim.  (Doc. 13-1 at 22-23).  To the extent this argument relies on an assertion that there was no breach of contract, an issue not determined in this Order, it fails at this stage. To the extent Defendant asserts it had a "reasonable basis to dispute coverage," that argument is premature in light of the Court's determination not to dismiss the breach of contract claim at this time.  The Court notes that the case cited by Defendant in support of its argument that there was a "reasonable basis to dispute coverage" addressed the issue not at the motion to dismiss stage but at the summary judgment stage.  *See Riddle v. Auto-Owners Ins. Co.*, 2009 WL 2151386, at \*4 n.2 (E.D.N.C. July 17, 2009) (considering undisputed acts regarding a § 58-63-15(11)(f) claim at the summary judgment stage).[10]  Further, determining whether there was a "reasonable basis" before a determination of whether the Policy clause in question was ambiguous or clearly supported one side or the other – which would go to "reasonable basis" – would be putting the cart before the horse.  This argument, therefore, fails at the motion to dismiss stage.

Fourth, Defendant argues that Allegations 2 and 3 should be dismissed because they do not allege sufficient factual support and are "disproved by other allegations and exhibits to the Amended Complaint."  (Doc. 13-1 at 23-24).  With respect to Allegation 2 (Defendant delayed the investigation and settlement of the claim), Defendant cites *Meadlock v. Am. Family Life Assurance*

---

[10] The supplemental authority submitted by Defendant (Doc. 18), *Biltmore Ave. Condominium Assoc., Inc. v. Hanover Am. Ins. Co.*, 2017 WL 927259 (W.D.N.C. Mar. 8, 2017), also addressed the "reasonably clear" language of N.C. Gen. Stat. § 58-63-15(11)(f) at the summary judgment stage.

*Co.*, 729 S.E.2d 127, 2012 WL 2891079 (N.C. App. 2012) (unpublished), for the proposition that the court in that case expressed "skepticism" that a four-month delay could constitute a violation of § 58-63-15(11)(b) (failing to acknowledge and act reasonably promptly upon communications). *Meadlock* involved a summary judgment motion, not one to dismiss, and the court there was "not convinced the trial court erred in concluding there was no genuine issue of fact to be determined" when plaintiff at the summary judgment stage had pointed "to no evidence in the record that would allow a jury to make a determination of the reasonableness of Defendants' response to Plaintiff's filing [a claim], nor are we able to find any." 2012 WL 2891079, at *7. In *Meadlock*, plaintiff was allowed the opportunity to develop the record. The Plaintiff should have the opportunity to do so here. With respect to Allegation 3, which claims Defendant failed to provide a reasonable explanation of the basis of the denial, the reasoning is the same.

Finally, Defendant argues that the UDTPA claim should be dismissed because Plaintiff failed to allege any damages proximately caused by the alleged violations. (Doc. 13-1 at 24-25). There is some merit to this argument in that the Amended Complaint's prayer for relief seeks recovery for Plaintiff's "breach of [Defendant's] insurance contract," which left Plaintiff liable for a $200,000 settlement amount, plus a prayer for relief for treble damages and attorneys' fees under the UDTPA. (Doc. 12 at 8). No specific mention is made for damages related to the UDTPA claim itself in the prayer for relief. However, Plaintiff does include language in the Second Claim for Relief for any and all damages proximately caused by Defendant's UDTPA violations. (Doc. 12 at 7).

The principal case cited by Defendant in support, *Castle McCulloch, Inc. v. Freedman*, 610 S.E.2d 416 (N.C. App. 2005), involved a directed verdict at the end of plaintiff's presentation of all its evidence because no evidence had been put on at trial from which a jury could calculate

damages with reasonable certainty. 610 S.E.2d at 500-03. The Court finds *Castle McCulloch* of little or no guidance in determining whether a complaint pleads sufficient facts at the motion to dismiss stage in this case.

Defendant also argues that contractual damages, which Defendant contends are the only alleged damages here, are not subject to trebling under a UDTPA claim. (Doc. 13-1 at 24-25 (citing *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676 (N.C. 2000))). In *Gray*, however, plaintiffs were awarded damages for breach of contract under one count and damages for a violation of the UDTPA under another count. The court concluded that treble damages could be had on only the portion of the total award that was made under the UDTPA count. 529 S.E.2d at 685. Significantly, the court noted that a question of the possible application of election of remedies was not before it and therefore declined to address the issue. *Id.*

To be sure, a mere breach of contract, even if intentional, is not an unfair or deceptive act under the UDTPA. *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009). If the "same course of conduct gives rise" to a plaintiff's breach of contract and UDTPA claims, however, the plaintiff may recover "either for the breach of contract, or for violation of [the UDTPA] but not for both." *Colonial Trading, LLC v. Bassett Furniture Indus., Inc.*, 530 F. App'x 218, 227 (4th Cir. 2013) (describing party's recitation as an "accurate summary of North Carolina law"; citing North Carolina court of appeals opinion for the proposition). Further, a § 58-63-15(11)(f) claim looks not to just whether a failure to pay occurred but to whether an insurance company failed to effectuate prompt, fair, and equitable settlement of the claim for which liability had become "reasonably clear." Defendant's argument on the effect of contractual damages, therefore, does not warrant dismissal of Plaintiff's UDTPA claim.

Defendant's Motion to Dismiss the part of the Second Claim for Relief constituting Plaintiff's UDTPA claim is **DENIED**.

C.    Third Claim for Relief: Punitive Damages

Defendant argues that Plaintiff's Third Claim, a stand-alone cause of action for "Punitive Damages," should be dismissed because "punitive damages" is not a cause of action under North Carolina law. (Doc. 13-1 at 25). Plaintiff apparently concedes that a punitive damages claim is not technically an independent cause of action but argues that it has alleged claims for relief under which compensatory damages may be awarded and has alleged sufficient aggravating circumstances to plead a proper request for punitive damages. (Doc. 15 at 16).

In support of its position, both Defendant and Plaintiff quote from *Taylor v. Bettis*, 976 F. Supp. 2d 721, 747 (E.D.N.C. 2013), *aff'd*, 2017 WL 2992087 (4th Cir. 2017) (unpublished per curiam), for the proposition that "[a] punitive damages claim is not technically an independent cause of action, but is instead dependent upon an award of compensatory damages on one of a plaintiff's other claims." (Doc. 13-1 at 25 (quoting *Taylor*, 976 F. Supp. 2d at 747)). The court in *Taylor* denied a motion to dismiss a claim for punitive damages because one claim (conversion) might still survive the motion to dismiss in that case. 976 F. Supp. 2d at 747. Similarly, in the other case cited by Defendant, *Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 764 (M.D.N.C. 2004), the court, while noting that a claim for punitive damages does not exist as a unique cause of action *per se*, declined to dismiss the plaintiff's specific claim for punitive damages.

Defendant saves most of its argument regarding punitive damages for an extended footnote. In the footnote, Defendant argues that Plaintiff has not stated a claim for punitive damages for any other count. (Doc. 13-1 at 25 n.15). The case cited by Defendant in support, *Pittman v. Hyatt*

*Coin & Gun, Inc.*, 735 S.E.2d 856 (N.C. App. 2012), simply stands for the proposition that a claim for punitive damages is dependent on a successful claim. 735 S.E.2d at 859. In the footnote, Defendant also cites N.C. Gen. Stat. § 1D-15(d), which provides that "[p]unitive damages shall not be awarded against a person solely for breach of contract." The statute speaks for itself. As to the remaining cause of action, Defendant asserts that "Plaintiff's bad faith/UDTPA claim is defective and should be dismissed, and thus cannot serve as a source of compensatory damages." (Doc. 13-1 at 25 n.15). The Court, however, has determined not to dismiss Plaintiff's UDTPA claim at this stage of the litigation.[11]

For the foregoing reasons, Defendant's Motion to Dismiss the Third Claim for Relief ("Punitive Damages") is **DENIED**.

## V.    DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1)    Defendant's Motion to Dismiss the Amended Complaint (Doc. 13) is **GRANTED** with respect to that portion of Plaintiff's Second Cause of Action setting out a Breach of Good Faith and Fair Dealing claim and that claim is hereby **DISMISSED**; and

(2)    Defendant's Motion to Dismiss the Amended Complaint (Doc. 13) is **DENIED** in all other respects.

---

[11] Defendant argues that Plaintiff's bad/faith UDTPA claim, if dismissed, cannot serve as a source of compensatory damages. Defendant does not address the outcome here, where the bad faith settlement claim is dismissed but the UDTPA claim is not. Because Defendant has not addressed whether a UDTPA claim, standing alone, can be the basis for punitive damages, the Court declines to address the question at this time.

Signed: August 31, 2017

Richard L. Voorhees
United States District Judge